UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST,**

       **Plaintiff,**

v.                                                     **Civil No. 4:19cv45**

**WILLIAMSBURG CHRISTIAN ACADEMY,**

       **Defendant.**

## MEMORANDUM OPINION

This matter is before the Court on a motion to dismiss filed by Plaintiff/Counterclaim-Defendant Selective Insurance Company of the Southeast ("Selective"), which seeks the dismissal of Counts III and V of Defendant/Counterclaim-Plaintiff Williamsburg Christian Academy's ("WCA") Counterclaim. Selective's Mot., ECF No. 14. After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented, and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J).

For the reasons stated below, Selective's motion to dismiss Counts III and V of WCA's Counterclaim is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

"WCA is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business located in Williamsburg, Virginia." WCA's Answer and Countercl. at 6, ECF No. 12. Selective is an insurance company incorporated in Indiana, with its principal place of business located in North Carolina. Id. On May 25, 2018, a complaint was filed by Peter and Jaime Van Bergen against WCA ("Van Bergen Lawsuit") in state court, alleging that WCA breached a written contract or, in the alternative, breached an implied contract. Id. at 6, 8. WCA subsequently demanded that Selective, as WCA's insurer, provide WCA a defense in the Van Bergen Lawsuit pursuant to Selective Policy No. S2128500 ("Selective Policy").[2] Id. at 3, 9.

On May 3, 2019, Selective filed this complaint against WCA (the "Complaint") that included one Count for Declaratory Judgment, in which Selective sought "a declaration pursuant to 28

---

[1] The facts recited here come from WCA's Answer and Counterclaim and are assumed true only to decide the motion to dismiss. The facts stated here are not factual findings for any purpose other than consideration of the pending motion. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the [non-moving party] in weighing the legal sufficiency of the complaint.").

[2] A more complete recitation of the factual allegations pertaining to the Van Bergen lawsuit and Selective Policy is included in the Court's prior Memorandum Order denying WCA's motion to dismiss. See Mem. Order, ECF No. 10. The Court finds it unnecessary to reproduce such allegations here for the purpose of resolving the instant motion.

U.S.C. § 2201 and § 2202 that [WCA] is not entitled to coverage with respect to the Van Bergen Lawsuit under the Selective Policy." Compl. ¶ 36, ECF No. 1.  On June 7, 2019, WCA filed a motion to dismiss the Complaint, ECF No. 6, and an accompanying memorandum, ECF No. 7.  On June 21, 2019, Selective filed a memorandum in opposition to WCA's motion to dismiss, ECF No. 8, to which WCA responded on June 27, 2019, ECF No. 9.  On September 16, 2019, the Court issued a Memorandum Order denying WCA's motion to dismiss the Complaint.  Mem. Order, ECF No. 10.

 On September 30, 2019, WCA filed an Answer and Counterclaim, which included five counts against Selective, namely: (1) Request for Declaratory Judgment according to the School Board Legal Liability Coverage; (2) Request for Declaratory Judgment according to the Abuse or Molestation Coverage; (3) Professional Negligence/Legal Malpractice of Selective's Chosen Attorney or Professionals; (4) Breach of Contract; and (5) Statutory Responsibility for Attorney's Fees According to Va. Code § 38.2-209.  WCA's Answer and Countercl. at 13-18.  On October 21, 2019, Selective filed the instant motion to dismiss Counts III and V of WCA's Counterclaim, Selective's Mot., as well as an accompanying memorandum, Selective's Memo., ECF No. 15.  On November 4, 2019, WCA filed a memorandum in opposition to the instant motion, WCA's Resp., ECF No. 16, to which Selective replied on November 12, 2019, Selective's Reply, ECF No. 17.

## II. STANDARD OF REVIEW

The Rule 12(b)(6) standard of review permits dismissal when a complaint or counterclaim fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint or counterclaim fails to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Though a complaint or counterclaim need not be detailed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555; see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A motion to dismiss tests the sufficiency of a complaint or counterclaim without resolving factual disputes, and a district court "'must accept as true all of the factual allegations contained in the complaint [or counterclaim]' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). Although the truth of the facts alleged is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); see Iqbal, 556 U.S. at 678 (citing

4

Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint [or counterclaim] must include 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Johnson v. Am. Towers, LLC, 781 F.3d 693, 709 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

### III. DISCUSSION

#### A. Count III - Professional Negligence/Legal Malpractice

WCA describes Count III of its Counterclaim as "a cause of action for a breach of contract alleging two alternatives." WCA's Resp. at 4. The two alternatives are: (1) Selective, through the negligent actions of the attorney or attorneys that it appointed to represent WCA, is liable for legal malpractice; or (2) if instead Selective failed to appoint an attorney to represent WCA, then Selective is liable for professional negligence. WCA's Answer and Countercl. at 15-16. The Court considers both alternatives below.

#### 1. Alternative I - Legal Malpractice

Under Virginia law, "[a] cause of action for legal malpractice requires the existence of an attorney-client relationship which gave rise to a duty, breach of that duty by the defendant attorney, and that the damages claimed by the plaintiff client must have

5

been proximately caused by the defendant attorney's breach." <u>Smith v. McLaughlin</u>, 289 Va. 241, 253 (2015) (quoting <u>Shipman v. Kruck</u>, 267 Va. 495, 501 (2004)); <u>see</u> <u>also</u> <u>Carstensen v. Chrisland Corp.</u>, 247 Va. 433, 447 (1994) ("The existence of an attorney-client relationship is essential to establishing a claim of legal malpractice."). In its motion to dismiss, Selective argues that WCA has failed to allege "that Selective had an attorney-client relationship with an attorney hired or ordered to represent [WCA]" and that, "[t]o the extent Selective hired or ordered an attorney to represent [WCA], Selective has no obligation, contractual or otherwise, to take responsibility for the actions of such an attorney." Selective's Memo. at 3. WCA argues that it "did allege an attorney-client relationship <u>between WCA and a Selective-appointed attorney</u>" and that such "attorney was appointed by Selective and was an agent of Selective." WCA's Resp. at 4 (emphasis added). Selective responds that WCA's claim should be dismissed because "[a] claim for legal malpractice must be brought against an <u>attorney</u> with whom the plaintiff has an attorney-client relationship." Selective's Reply at 2.

In assessing WCA's legal malpractice claim, the Court finds instructive the Supreme Court of Virginia's decision in <u>Carstensen v. Chrisland Corp.</u>, 247 Va. 433 (1994). In <u>Carstensen</u>, the plaintiffs filed a third-party bill of complaint against First American, their title insurance company, alleging that by denying

6

coverage and refusing to defend the plaintiffs in the underlying litigation, First American "breached its fiduciary duty to them, breached the contracts of title insurance, refused to defend the litigation in bad faith, and engaged in legal malpractice." Id. at 437 (emphasis added). The Supreme Court of Virginia affirmed the trial court's dismissal of the legal malpractice claim, stating:

> First American is a title insurance company, not a professional corporation qualified to render the professional services of an attorney pursuant to Code §§ 13.1-542 through -556. An attorney-client relationship cannot be created by a non-attorney acting as an attorney. If the non-attorney employees of First American engaged in acts reserved to attorneys, charges of unauthorized practice of law may lie, as noted by the trial court, but not claims for legal malpractice. In light of our conclusion that the [plaintiffs'] evidence did not establish an attorney-client relationship, we need not address the trial court's determination that the Neighbors did not establish an injury caused by the alleged negligence.

Id. at 447-48. Here, as in Carstensen, the Court is asked to conclude that an attorney-client relationship arises within the context of an insurer-insured relationship based on an alleged duty to defend. However, WCA cites to no caselaw in which a non-attorney, even an insurer with a duty to defend, was held liable for legal malpractice under Virginia law. The Court will not extend the scope of Virginia's legal malpractice law beyond that which the Virginia courts have deemed appropriate. Accordingly,

7

the Court finds that the facts alleged by WCA are insufficient to support a legal malpractice claim against Selective.

### 2. Alternative II - Professional Negligence

As an alternative theory, WCA claims that, "to the extent that Selective did not appoint an attorney," the failure to have an attorney draft and review the relevant legal documents "was grossly negligent under the standard of care appropriate to the insurance profession and constitutes professional negligence." WCA's Answer and Countercl. at 16. Selective responds by arguing that "the economic loss doctrine bars [WCA's] negligence claim."[3] Selective's Memo. at 4.

The law of Virginia requires that, "'in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" Tingler v. Graystone Homes, Inc., --- Va. ---, 834 S.E.2d 244, 255 (2019) (quoting MCR Fed., LLC v. JB&A, Inc., 294 Va. 446, 458 (2017)). Put another way, "[a] tort action cannot be based solely on a negligent breach of contract." Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 559 (1998). This legal principle, which is often referred to as the "source of duty" rule, is related to the "economic loss rule" or "economic loss doctrine," which provides that, for any allegation that the

---

[3] The Court notes that the parties have somewhat interchangeably used the terms "negligence" and "professional negligence."

"bargained-for level of quality" in a contract has not been met, "the law of contracts provides the sole remedy." Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 425 (1988). These legal principles establish when tort claims, contract claims, or both may be brought under Virginia law.[4]

In one of the preeminent cases on Virginia's economic loss rule, Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., the plaintiffs brought a negligence claim against an architect and pool contractor with whom the plaintiffs had contracted to build their new home. 236 Va. 419, 422 (1988). The plaintiffs sought, through their negligence claim, to recover for damages to their

---

[4] The Court notes that there is an apparent dispute as to whether WCA's professional negligence claim should be considered as a contract claim or, like a claim for negligence, as a tort claim. "[T]he Supreme Court [of Virginia] has held many times that although a professional negligence case is necessarily governed by contract law principles, it sounds in tort." Fegan v. Hazel, 25 Va. Cir. 296, 298 (Fairfax Cty. Cir. Ct. 1991) (citing MacLellan v. Throckmorton, 235 Va. 341, 344 (1988), Boone v. C. Arthur Weaver Company, 235 Va. 157, 161 (1988), and Oleyar v. Kerr, Trustee, 217 Va. 88, 90 (1976)). Moreover, numerous courts have considered professional negligence claims as tort claims for the purpose of analysis pursuant to the source of duty and economic loss rules. See, e.g., VA Timberline, LLC v. Land Mgmt. Grp., Inc., 471 F. Supp. 2d 630, 632-34 (E.D. Va. 2006); McConnell v. Servinsky Eng'g, PLLC, 22 F. Supp. 3d 610, 616-17 (W.D. Va. 2014). As such, the Court will consider WCA's professional negligence claim as a tort claim for the purpose of its consideration of the source of duty and economic loss rules. While such classification requires WCA to overcome the economic loss doctrine and source of duty rule, even if WCA's professional negligence claim was instead considered as a contract claim, such claim would be duplicative of Count IV of WCA's Counterclaim, and would therefore be merged into Count IV to form a single breach of contract count. See Phoenix Packaging, Operations, LLC v. M&O Agencies, Inc., No. 7:15cv569, 2016 U.S. Dist. LEXIS 72945, at *13 (W.D. Va. June 3, 2016) ("In essence, Counts I and II allege the same thing, breach of the insurance agency agreement by Mahoney through failure to procure stop loss insurance for the 2014-15 year. Because Counts I and II are duplicative, the court will enter an order that they be merged into one count . . . .").

indoor swimming pool and to the foundation of their house, which they allege were caused by defendants' negligent design, supervision, and construction. Id. The Supreme Court of Virginia held that Virginia law did not permit plaintiffs to maintain a negligence claim because "[r]ecovery in tort is available only when there is a breach of a duty to take care for the safety of the person or property of another. The architect and the pool contractor assumed no such duty to the plaintiffs by contract, and the plaintiffs' complaint alleges no facts showing a breach of any such duty imposed by law."[5] Id. at 425 (internal citation and quotation marks omitted).

The Court also finds instructive the decision in VA Timberline, LLC v. Land Mgmt. Grp., Inc., in which the plaintiff, a developer, brought a claim for professional negligence against a company that had provided soil testing work for plaintiff. 471 F. Supp. 2d 630, 632 (E.D. Va. 2006). The plaintiff "allege[d] that, [i]n performing the work under the Agreement, the Defendants

---

[5] In its brief, WCA makes reference to a defense based on privity. WCA's Resp. at 9. While the Court recognizes that there is some dispute amongst courts as to whether Virginia's economic loss rule applies when the parties are in privity, there is no dispute that the source of duty rule applies regardless of whether the parties are in privity. See KCE Properties, Inc. v. Holy Mackerel, Inc., No. 4:16cv42, 2016 U.S. Dist. LEXIS 150621, at *7 (E.D. Va. Oct. 31, 2016) ("The source of duty rule affirms the separateness of tort and contract and the liability of those in privity.") (quoting 1-18 Virginia Remedies § 18.03). Furthermore, the Supreme Court of Virginia, in Filak v. George, applied the economic loss rule to bar a constructive fraud claim even though the parties were in privity. 267 Va. 612, 618 (2004). Therefore, the Court determines that the source of duty or economic loss rule may apply here, even if the parties were in privity.

10

owed a duty to [the plaintiff] to exercise the level of care and skill that other similarly skilled and licensed soil scientists would use . . . ." Id. at 633 (internal quotation marks omitted). The court dismissed the plaintiff's professional negligence claim on the basis that the plaintiff was "alleging that Defendants breached a duty under a contract," noting that "[m]ultiple courts applying Virginia law have dismissed tort claims when the underlying cause of action is truly for breach of contract." Id.; see also McConnell v. Servinsky Eng'g, PLLC, 22 F. Supp. 3d 610, 616 (W.D. Va. 2014) ("An engineer performing a professional service pursuant to a contract does not also assume an independent tort duty. Adherence to professional standards is an implicit term of any contract for services from a professional engineer . . . . However, this does not create an independent tort duty.") (internal citations omitted).

Turning back to the consideration of an insurer-insured relationship, WCA correctly summarizes the Virginia law establishing that "[a] covenant of good faith is implied in insurance contracts, and imposes a burden on both parties that neither will do anything in bad faith to injure the others' rights under the agreement," but omits that "[b]ad faith is failure to perform one's duty of good faith, and, in the insurance context, that duty flows from the obligations created by the insurance

11

contract."[6] Manu v. GEICO Cas. Co., 293 Va. 371, 386 (2017) (emphasis added). Therefore, "[b]ecause the covenant of good faith is an implied term of the contract, a breach of that covenant entitles the non-breaching party to seek contractual remedies," not remedies in tort. Id. at 390 (emphasis added) (quoting 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 198:8 (rev. ed. 2007)). The court in Metro. Life Ins. Co. v. Gorman-Hubka, summarized the insurer-insured relationship under Virginia law as such:

> [T]he Supreme Court of Virginia has never recognized the existence of a separate tort duty that an insurer owes to its insured . . . . Indeed, to the contrary, the Supreme Court of Virginia has held that an insurance agent "did not have a common law duty to the [insured] arising out of the parties' dealings" and that "[t]he law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property . . . ." Filak v. George, 267 Va. 612, 618 (2004) (citing Ward v. Ernst & Young, 246 Va. 317, 324 (1993)) (affirming dismissal of constructive fraud claim against insurance agent under economic loss rule). As the Supreme Court of Virginia explained in Filak, where, as here, "a plaintiff alleges and [seeks to] prove[] nothing more than disappointed economic expectations assumed only by agreement, the law of contracts not the law of torts, provides the remedy for such economic losses." Id.

No. 1:15-cv-1200, 2016 U.S. Dist. LEXIS 193165, *8-9 (E.D. Va. Mar. 28, 2016).

---

[6] The Court notes that "Virginia law does not recognize an independent cause of action for bad faith . . . . Bad faith is only a source of additional recovery on a breach of contract claim against the insurer." Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co., 261 F. Supp. 3d 680, 694 (E.D. Va. 2017), aff'd, 757 F. App'x 229 (4th Cir. 2018).

12

This is not to say that an insurer _cannot_ owe the insured a common law duty that could support a professional negligence claim, merely that the insurance relationship _alone_ does not create such a common law duty. Cf. Kitchen v. Throckmorton, 223 Va. 164, 176 (1982) (finding that, as administratrix of an estate, defendant owed fiduciary duty that supported constructive fraud claim). Put another way, "a common law duty may arise from the relationship between an insurance agent and the insured, a duty that is separate and distinct from that derived from a contract between the parties . . . , [but] [i]f an independent common law duty has not been alleged, then this is a case grounded in contract and an action for negligence cannot survive." Filak v. George, 58 Va. Cir. 500, 505 (Chesterfield Cty. Cir. Ct. 2002). "In summary, if the defendant's duty to the plaintiff[] arose solely from the plaintiff's contract with the insurance carrier, the economic loss rule will bar recovery and the demurrer to the motion for judgment [should] be sustained for failure to allege a viable cause of action." Id. at 506; see also TMS Envirocon v. BB&T Ins. Servs., Inc., No. 2:09-cv-598, 2010 U.S. Dist. LEXIS 149701, at *4 (E.D. Va. Apr. 5, 2010) ("Plaintiff alleges Defendant was negligent pursuant to their duties as Plaintiff's insurance agent . . . . As Plaintiff does not contest that this Count is based on the underlying breach of their professional agreement, there is no common law duty breached . . . . [and] there can be no recovery

13

outside of contract. Therefore, Defendant's Motion to Dismiss Count II [Negligence] is GRANTED."); Mil-Rich, Inc. v. Travelers Prop. Cas. Ins. Co., 100 Va. Cir. 445, 450 (Westmoreland Cty. Cir. Ct. 2008) ("Malpractice claims are about breaches of duties to exercise the knowledge, skill and care ordinarily employed by members of a profession. But where such duties arise because they are the implied terms of a contract for professional services, the violation of such duties is a cause of action in contract and not tort . . . ."). Here, WCA itself alleges that the duties violated by Selective "aris[e] out of the contractual relationship" between the two parties. WCA's Resp. at 6. As made clear by the Virginia caselaw summarized above, such contractual duties cannot support a tort claim, but instead only a breach of contract claim, which WCA has brought as Count IV of its Counterclaim.[7] See WCA's Answer and Countercl. at 16-17.

The Court also takes note of the policy considerations underlying Virginia's treatment of contract and tort claims, which, while not necessary considerations for the Court's decision, buttress the Court's reasoning. As the Supreme Court of Virginia has explained, "[t]he controlling policy consideration

---

[7] As previously noted in Footnote 4, even if WCA's professional negligence claim were treated as a contract claim and not a tort claim, the result would still be the same as such claim would be duplicative of Count IV of WCA's Counterclaim and would therefore be merged into Count IV to form a single breach of contract count. See Phoenix Packaging, 2016 U.S. Dist. LEXIS 72945, at *13.

14

underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for." Sensenbrenner, 236 Va. at 425. "Thus, when a plaintiff alleges and proves nothing more than disappointed economic expectations assumed only by agreement, the law of contracts, not the law of torts, provides the remedy for such economic losses." Filak, 267 Va. at 618. It is clear from WCA's own statements that the present case concerns an alleged economic loss and the protection of the bargained-for expectations detailed in the Selective Policy rather than the safety of persons and property, with which the common law of torts is primarily concerned. See also VA Timberline, 471 F. Supp. 2d at 633 ("The present case does not involve the safety of persons and property from injury; however, the present case does involve economic loss and the protection of bargained-for expectations . . . . The contract between the parties thus forms the sole basis for Plaintiff's alleged damages.").

Accordingly, the Court finds that the facts pled by WCA are sufficient to support a cause of action against Selective for breach of contract, but not professional negligence. Based on this conclusion and the Court's conclusion in Section III.A.1—that the facts alleged by WCA are insufficient to support a legal

malpractice claim against Selective—Count III of WCA's Counterclaim is **DISMISSED**.

### B. Count V - Va. Code § 38.2-209

In Count V of its Counterclaim, WCA argues that, pursuant to Va. Code § 38.2-209, "Selective is obligated to pay the reasonable attorney's fees and costs related to the defense of the Complaint and the present litigation involving the Declaratory Judgment." WCA's Answer and Countercl. at 18. The Code of Virginia provides that:

> [I]n any civil case in which an insured individual sues his insurer to determine what coverage, if any, exists under his present policy . . . or the extent to which his insurer is liable for compensating a covered loss, the individual insured shall be entitled to recover from the insurer costs and such reasonable attorney fees as the court may award. However, these costs and attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the policy.

Va. Code § 38.2-209. However, as argued by Selective and as previously held by this Court on multiple occasions, Va. Code § 38.2-209 does not provide an independent cause of action for relief, but instead operates as a fee-shifting statute that may be invoked only after the entry of judgment. See Capitol Prop. Mgmt. Corp. v. Nationwide Prop. & Cas. Ins. Co., 261 F. Supp. 3d 680, 694 (E.D. Va. 2017), aff'd, 757 F. App'x 229 (4th Cir. 2018) ("[Section] 38.2-209 does not create a separate and independent cause of action for bad faith."); Tiger Fibers, LLC v. Aspen

16

Specialty Ins. Co., 594 F. Supp. 2d 630, 654 (E.D. Va. 2009) ("Section 38.2-209 does not create an independent cause of action . . . . [A] party may seek relief under Section 38.2-209 only after a judgment is entered against the insurer.") (internal citations omitted); Adolf Jewelers, Inc. v. Jewelers Mut. Ins. Co., No. 3:08-cv-233, 2008 U.S. Dist. LEXIS 55791, at *14 (E.D. Va. July 21, 2008)(same); Cradle v. Monumental Life Ins. Co., 354 F. Supp. 2d 632, 635 (E.D. Va. 2005) ("Plaintiff may only recover against Defendant pursuant to Va. Code § 38.2-209 after a judgment has been entered against Defendant."); see also US Airways, Inc. v. Commonwealth Ins. Co., 64 Va. Cir. 408, 419 (Arlington Cty. Cir. Ct. 2004) ("The statute does not create a separate cause of action . . . . Therefore, [the plaintiff] may rely on § 38.2-209 for recovery of costs and fees, but it cannot in this current litigation, claim a wholly separate cause of action for bad faith under the policy.") (internal citation omitted). As such, a claim under § 38.2-209 may not be brought as a separate cause of action, as WCA has asserted in Count V, "but only as a source of recovery of costs and attorney's fees once a judgment is entered against the insurer." Tiger Fibers, 594 F. Supp. 2d at 655. Accordingly, Count V of WCA's Counterclaim is **DISMISSED**.

## IV. CONCLUSION

Based on the foregoing analysis, Selective's motion to dismiss Counts III and V of WCA's Counterclaim is **GRANTED**. The Clerk is **REQUESTED** to send a copy of this Memorandum Opinion to all counsel of record.

**IT IS SO ORDERED.**

/s/ <br>
Mark S. Davis <br>
Chief United States District Judge

April  29 , 2020
Norfolk, Virginia